UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VANESSA ADAMS, legal name Nicholas Adams )
)
)
Plaintiff, )
)
v. )
)
FEDERAL BUREAU OF PRISONS; FEDERAL )
BUREAU OF PRISONS DIRECTOR HARLEY G. )
LAPPIN, in his official capacity; REAR ADMIRAL )
NEWTON E. KENDIG, MD, in his official capacity, )
and DR. JAMES FLETCHER, PSYCHIATRIST FMC )
DEVENS, in his individual capacity, )

Defendants

FILED
IN CLERKS OFFICE
2009 FEB 24 ⊃ 12: 07
U.S. DISTRICT COURT
DISTRICT OF MASS.

09 CA 1 0 2 7 2 JLT

CIVIL ACTION
NO. _____

MAGISTRATE JUDGE _____

## COMPLAINT

Plaintiff Vanessa Adams, legal name Nicholas Adams,[1] by counsel, brings this action to obtain redress for the deprivation of her federal constitutional rights, as hereinafter alleged.

### INTRODUCTION

1. Plaintiff is currently a prisoner serving her sentence at a facility operated by the Federal Bureau of Prisons ("BOP").

2. Plaintiff was diagnosed with Gender Identity Disorder in 2005 by medical professionals at United States Medical Center for Federal Prisoners (USMCFP) Springfield.

3. Despite knowing of the Plaintiff's diagnosis and of the fact that she has on multiple occasions caused serious harm to herself, Defendants have refused, and continue to refuse to provide appropriate medical care for Plaintiff's condition.

---

[1] Although Plaintiff was born a biological male, she identifies as female, goes by "Vanessa," and intends to change her legal name to "Vanessa Adams." Accordingly, throughout this pleading, she will be referred to by the feminine pronoun and salutation.

1

A/72835556.2

4. Plaintiff by this action challenges Defendants' refusal to provide medical care as an unconstitutional deprivation in violation of the Eighth Amendment of the United States Constitution.

5. In support of their refusal to provide medical care for Plaintiff, BOP officials and staff have referred to a BOP policy which prevents prisoners with Gender Identity Disorder from receiving individualized medical assessments and treatment for this serious medical condition.

6. Plaintiff challenges the constitutionality of this policy both on its face and as applied to her as a violation of the Eighth Amendment of the United States Constitution.

7. Plaintiff seeks declaratory and injunctive relief, as well as money damages.

## JURISDICTION

8. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that it is a civil action arising under the Constitution and laws of the United States and is premised upon the acts or omissions of defendants acting under color of federal law.

9. Jurisdiction in this Court is proper for the Plaintiff's claim for declaratory and injunctive relief against Defendants Federal Bureau of Prisons, Director Harley G. Lappin, and Assistant Director Health Services Dr. Newton E. Kendig in their official capacities pursuant to 5 U.S.C. § 702.

10. This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

11. Jurisdiction in this Court is proper for the Plaintiff's damages claim against Defendant DR. FLETCHER in his individual capacity in that it is premised upon the cause of action recognized in the United States Supreme Court ruling in *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), as well as the Eighth Amendment of the United States Constitution.

12. Venue in the District of Massachusetts is proper pursuant to 28 U.S.C. § 1391(e).

13. All Defendants are agencies, officers, or employees of the United States of America, or were at the time of the incidents at issue.

## PARTIES

14. Plaintiff, VANESSA ADAMS, at all times material to this action, has been a federal prisoner in the custody and control of the Federal Bureau of Prisons (BOP). She is currently housed at United States Penitentiary–1, Federal Correctional Complex at Coleman in Florida (USP-1 Coleman).

15. Defendant, FEDERAL BUREAU OF PRISONS (hereinafter, "BOP"), is the United States agency that currently and at all times relevant to this Complaint, has custody and control of Plaintiff Adams.

16. Defendant, HARLEY G. LAPPIN, ("LAPPIN"), is currently and has been Director of the BOP at all times relevant to this claim. He is sued in his official capacity.

17. Defendant, REAR ADMIRAL NEWTON E. KENDIG, MD ("KENDIG"), is currently Assistant Director, Health Services Division and Medical Director of the BOP. He has been Medical Director of the BOP since 1999, and Assistant Director, Health Services Division, since August 2006. He is responsible for the provision of health services at all BOP facilities. He is sued in his official capacity.

18. Defendant, DR. JAMES FLETCHER, was the psychiatrist responsible for Plaintiff Adams' medical care at Federal Medical Center Devens from August 4, 2005 through March 23, 2006. He is sued in his individual capacity.

19. There is an actual controversy between and among the parties.

## GID IS A SERIOUS MEDICAL CONDITION THAT REQUIRES ADEQUATE MEDICAL TREATMENT

20. Ms. Adams was diagnosed with GID in 2005 by mental health providers employed by Defendant BOP.

21. GID is a recognized diagnosable and treatable medical condition listed in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR). Diagnosis is based on the following criteria: (1) a strong cross-gender identification, which is the desire to be, or the insistence that one is, the other sex; (2) a persistent discomfort with one's assigned sex or an inappropriateness in the gender role of that sex; (3) the disturbance is not concurrent with a physical intersex condition (e.g. a person who is born with ambiguous genitalia); and (4) the disturbance causes clinically significant distress

3

or impairment in social, occupational, or other important areas of functioning.

22. The World Health Organization also recognizes the discordance between anatomical sex and gender as a disorder in its 1990 publication, *The International Classification of Diseases* (known as ICD-10), but uses the nomenclature of transsexualism.

23. The World Professional Association for Transgender Health (WPATH) is an international professional association of physicians and other health care professionals who specialize in treating GID. WPATH promotes understanding and treatment of gender identity disorders. WPATH publishes the internationally accepted *Standards of Care for the Treatment of Gender Identity Disorders* (*Standards of Care*).

24. The *Standards of Care* are guidelines for care and treatment of people with GID.

25. The goal of medical treatments for GID according to the *Standards of Care* is: (1) to alleviate the clinically significant distress and impairment of functioning associated with GID, and (2) to achieve lasting personal comfort with the gendered self in order to maximize overall psychological well-being and self-fulfillment.

26. The *Standards of Care* provide that there are three medically appropriate treatment options to treat GID: (1) hormones of the desired gender; (2) the "real-life experience," i.e. living full-time in the new gender, as a prerequisite to surgery; and (3) surgery to change the sex characteristics of the person suffering from GID. These treatment options are frequently referred to as triadic therapy. Triadic therapy is recognized throughout the medical community as the accepted and appropriate treatment for GID.

27. According to the *Standards of Care* and the DSM-IV-TR, people with GID who do not receive appropriate medical treatment are at risk of genital self-harm (a form of surgical self-treatment through auto-castration or auto-penectomy that can lead to serious, even life threatening, injuries), depression, anxiety, and suicide attempts.

A/72835556.2

## MS. ADAMS' GENDER IDENTITY DISORDER WAS DIAGNOSED BY THE BOP IN 2005

28. Ms. Adams was received by the BOP in 1999, and is currently serving a 248-month sentence in the BOP, with a projected release date in 2017. Since 1999, Ms. Adams has been imprisoned in at least seven different BOP facilities in seven states. She was initially designated to Federal Correctional Institution ("FCI") Tucson in Arizona, and then transferred to FCI Victorville in California where she was incarcerated for three years. In 2003 she was transferred to United States Medical Center for Federal Prisoners ("USMCFP") Springfield, in Missouri for a psychiatric evaluation. She was returned to FCI Tucson in February 2004. She returned to USMCFP Springfield in May 2004 for voluntary inpatient treatment after her third suicide attempt in BOP custody.

29. After attempting to cut off her testicles, in August 2005, Ms. Adams was transferred to Federal Medical Center ("FMC") Devens in Massachusetts for inpatient mental health treatment. In March 2006, she was transferred to United States Penitentiary ("USP") Beaumont in Texas where she was held until December 2006. In December 2006, she was sent to the Federal Transfer Center in Oklahoma before her final transfer on January 4, 2007 to USP-1 Coleman in Florida, where she is currently incarcerated.

30. Ms. Adams was born in Greenville, Illinois in 1970. Throughout her life, Ms. Adams has believed she was assigned the wrong gender. This has caused her much emotional turmoil since she was a child, but she was not able to seek treatment because of family and societal pressures.

31. The emotional and physical consequences of identifying as female while being physiologically male intensified severely during her time of incarceration within the BOP, resulting in several suicide attempts and eventually leading to her 2005 GID diagnosis.

32. In September 2002, at FCI Victorville, Ms. Adams attempted suicide by hanging herself.

33. In July 2003, at FCI Victorville, Ms. Adams attempted suicide by cutting her wrists.

34. In May 2004, at FCI Tucson, Ms. Adams admitted to planning to commit suicide by taking deliberate action that would lead correctional officers to shoot her (colloquially known as "death by cop").

A/72835556.2

35. As a result of this attempt, Ms. Adams was sanctioned to 30 days disciplinary segregation and transferred to the Axis II residential treatment program at USMCFP Springfield to address her suicidality and chronic depression.

36. While participating in the Axis II program, Ms. Adams raised her feelings of being trapped in the wrong body during individual counseling for depression and tendencies toward self-harm.

37. Ms. Adams' treating psychologist at USMCFP Springfield formally diagnosed Ms. Adams with Gender Identity Disorder sometime in late 2004 or early 2005.

## DEFENDANTS FAILURE AND REFUSAL TO TREAT MS. ADAMS' GID CONDITION

38. Despite this diagnosis and Ms. Adams' numerous requests for GID treatment starting in February 2005, Defendant BOP refused to provide medical treatment. This denial exacerbated Ms. Adams' GID condition and caused her overall health to further deteriorate.

39. Although Defendants knew that persons with untreated GID have heightened suicide risk, and that Ms. Adams had a history of suicide attempts. Defendants denied Ms. Adams adequate medical care to treat her condition. On February 8, 2005, at USMCFP Springfield, Ms. Adams attempted to hang herself in her cell.

40. Defendant BOP still did not provide Ms. Adams with treatment following this suicide attempt. Instead, she was charged with Destruction of Government Property for breaking the sprinkler head that failed to support her weight during the suicide attempt, and charged a fine of $50.00.

41. On July 15, 2005, also while at USMCFP Springfield, Ms. Adams attempted to cut off her testicles with a razorblade, as an attempt at self-treatment for her GID. Ms. Adams was found in the shower in a pool of blood, with a gaping wound in her scrotal sac that required seven staples to repair.

42. Ms. Adams told the nurse attending to her wound, "I cut myself with a razor, these things are driving me nuts. I don't want them anymore. Nobody knows what it is like to be in the wrong body. Can't you just finish it."

43. After this incident, Ms. Adams' treating psychiatrist confirmed her initial diagnosis of GID, but still did not provide her treatment. Instead Ms. Adams was disciplined for 30 days and transferred to the inpatient mental health unit at FMC Devens.

A/72835556.2

44. Defendants knew Ms. Adams had a serious medical condition and was at high risk of self harm, as demonstrated by her transfer, in August, 2005, from USMCFP Springfield to FMC Devens *because* the Devens' facilities were equipped to address the acute mental health needs of incarcerated individuals.

45. Upon intake at the inpatient mental health unit at FMC Devens on August 5, 2005, BOP psychiatrist Defendant DR. FLETCHER performed a diagnostic assessment of Ms. Adams and further confirmed that she suffers from GID. Dr. FLETCHER also denied Ms. Adams treatment for GID, despite her multiple suicide attempts and recent attempt to self-castrate.

46. Although Defendants knew that Ms. Adams, as a person with untreated GID, had heightened suicide risk and was at risk for further genital self-mutilation, Defendants continued to deny Ms. Adams adequate medical treatment.

47. On August 15, 2006, at USP Beaumont, Ms. Adams attempted to sever her penis with a razorblade, in an attempt at self-treatment for her GID.

48. A USP Beaumont psychologist concluded that Ms. Adams' attempt to cut off her penis was a result of her GID condition, specifically her preoccupation with getting rid of primary or secondary sexual characteristics.

49. However, the psychologist did not recommend or provide any treatment for her GID. Instead Ms. Adams was disciplined and lost visitation privileges for 60 days.

50. Although Defendants knew that Ms. Adams, as a person with untreated GID, had a heightened suicide risk and was at risk for further genital self-mutilation, Defendants still continued to deny Ms. Adams medical treatment for GID.

51. In December 2006, while at the Oklahoma City Federal Transfer Center en route to USP-I Coleman, Ms. Adams again attempted suicide, this time by consuming an overdose of psychotropic medication.

52. Since 2005, Ms. Adams has made numerous requests to BOP officials at multiple levels, including the Administrator of National Inmate Appeals, as well as chief psychiatrists, chief physicians, wardens, and treating psychologists in four different BOP facilities asking for medical treatment, including hormone treatment, for GID, but Defendants have repeatedly denied her treatment, although Defendants knew that Ms. Adams, as a person with GID, had a heightened risk of suicide and genital self-mutilation if left untreated.

7

53. In denying her treatment, Defendants rely on a BOP policy which prevents persons with GID from receiving hormone therapy if that course of treatment had not commenced prior to incarceration.

**DEFENDANTS BOP, LAPPIN, AND KENDIG PROMULGATED AND ENFORCED A POLICY THAT DENIES PRISONERS WITH GENDER IDENTITY DISORDER, INCLUDING MS. ADAMS, INDIVIDUALIZED EVALUATION AND CONSTITUTIONALY ADEQUATE TREATMENT**

54. BOP Program Statement P6031.01(30) provides that "Inmates who have undergone treatment for gender identity disorder will be maintained only at the level of change which existed when they were incarcerated in the Bureau. Such inmates will receive thorough medical and mental health evaluations, including the review of all available outside records. The Medical Director will be consulted prior to continuing or implementing such treatment. The Medical Director must approve, in writing, hormone use for the maintenance of secondary sexual characteristics in writing."

55. Defendants BOP, LAPPIN, and KENDIG are responsible for the promulgation and administration of BOP Program Statement policies.

56. BOP Program Statement P6010.02, Health Services Administration, signed by Defendant LAPPIN on January 15, 2005, governs the structure and administration of Health Services for inmates within the custody and control of the BOP.

57. BOP Program Statement P6031.01, Patient Care, signed by Defendant LAPPIN on January 15, 2005, outlines the detailed policies regarding inmate health care within the BOP, including the policy regarding GID treatment.

58. Program Statement P6010.02(5) delegates authority for the care and treatment of federal prisoners within the custody and control of the BOP to the Assistant Director, Health Services Division (HSD). Defendant KENDIG has been the Assistant Director, HSD since 2006.

59. Program Statement P6010.02(5)(a) subsection 1 delegates the "clinical direction and administration of all activities related to the physical and psychiatric care of inmates to the Medical Director. The Medical Director is the final health care authority for all clinical issues." Defendant KENDIG has been the Medical Director since 1999.

60. BOP relies on Program Statement P6031.01(30) to deny all inmates under its care any individualized medical assessment and appropriate care and treatment for GID.

61. BOP Program Statement P6031.01(30) excludes Ms. Adams from treatment for GID, without regard to her serious, individual medical needs, without regard to her history of suicidality and genital self-harm, and without regard to the serious future suicide risk she poses.

62. Due to Defendants' ongoing deliberate indifference to her serious medical need, Ms. Adams continues to suffer severe emotional harm and remains at risk for additional emotional and physical harm.

**DEFENDANT DR. FLETCHER FAILED AND REFUSED TO TREAT MS. ADAMS' GID CONDITION DESPITE HER SERIOUS MEDICAL NEEDS**

63. Upon admission to FMC Devens and the inpatient mental health unit, DR. FLETCHER noted Ms. Adams' history of GID, genital self-harm, and suicidality, specifically noting her still-healing wound on her scrotum from her attempted self-castration just two weeks prior.

64. Upon admission, while DR. FLETCHER informed Ms. Adams that pursuant to BOP policy, she was not eligible for hormone therapy he gave her a copy of the WPATH *Standards of Care* — which provides for the very care Defendants BOP and DR. FLETCHER were denying her.

65. DR. FLETCHER was responsible for Ms. Adams' mental health care while she was incarcerated at FMC Devens from August 4, 2005 through March 23, 2006. Ms. Adams was in the inpatient mental health unit until late January 2006.

66. DR. FLETCHER was aware of Ms. Adams' serious medical and mental health needs, including her diagnosis of GID and other mental health disorders, her ongoing desire for hormone therapy, as well as her history of suicide attempts and genital self-harm.

67. DR. FLETCHER's initial plan for Ms. Adams included monitoring for signs of suicide and had the goal of reducing "self-injurious or other negative behavior," but did not include any plan to medically or psychologically address her GID.

68. Though Ms. Adams repeatedly told DR. FLETCHER that she continued to need medical care and treatment for her GID and that she considered self-castration an alternative to hormone therapy, DR. FLETCHER offered no treatment for her GID condition.

69. Rather, during their meetings he read Ms. Adams excerpts of the BOP policy and the *Standards of Care*. He made it clear that Defendant BOP would not initiate hormone therapy under any circumstances, and that he would not provide GID-specific mental health treatment.

70. During her inpatient stay at FMC Devens, Ms. Adams requested evaluation and treatment for GID both in writing and during psychiatric sessions no fewer than ten times. Each time, Defendant DR. FLETCHER denied appropriate medical treatment simply because Ms. Adams did not meet BOP policy criteria – specifically, she had not been treated for GID prior to incarceration.

71. DR. FLETCHER repeatedly dismissed Ms. Adams' requests for treatment, giving her no treatment for her GID. Instead, DR. FLETCHER deliberately disregarded the seriousness of her medical condition.

72. DR. FLETCHER failed to develop any treatment plan for ongoing mental health care or medical care upon her discharge from the inpatient unit in late January 2006, even with her serious history of self-harm, her ongoing desire to access treatment for GID, and her co-existing mental health disorders. Her discharge diagnoses included GID and Gender Dysphoria, but DR. FLETCHER's report failed to provide any plan to address these conditions.

73. DR. FLETCHER remained responsible for Ms. Adams' psychiatric care after her discharge from inpatient care, and met with Ms. Adams at least two times prior to her transfer from FMC Devens in March 2006. DR. FLETCHER continued to ignore Ms. Adams' continued requests for treatment, and he failed to develop a discharge treatment plan that once transferred to a non-medical BOP facility, would provide Ms. Adams' with ongoing mental health and medical treatment for her serious medical condition and prevent future harm.

74. In August 2006, after her transfer to USP Beaumont, Ms. Adams attempted to cut off her penis stating to the responding psychologist that she "did not want it."

75. Ms. Adams' attempt to sever her penis resulted in significant physical and emotional injury and distress.

76. The reviewing psychologist at USP Beaumont determined that Ms. Adams' attempt to cut off her penis was the result of her GID condition and her desire to commence treatment for GID. The psychologist, in denying Ms. Adams treatment for GID at this time, noted and relied upon DR. FLETCHER's discharge report on Ms. Adams, and cited to DR. FLETCHER's comments that Ms. Adams was not eligible for GID treatment because of Defendant BOP's policy.

## DEFENDANTS CONTINUE TO DENY MS. ADAMS TREATMENT FOR GID, IGNORING HER SERIOUS MEDICAL NEEDS, BASED ON BOP POLICY AND DEFENDANT DR. FLETCHER'S 2005 REPORT DENYING HER TREATMENT

77. Ms. Adams' BOP medical, mental health, and inmate records consistently include references to DR. FLETCHER'S 2005 report diagnosing Ms. Adams with GID but denying her treatment because of BOP's policy.

78. After her transfer to USP Beaumont, Defendants repeatedly denied Ms. Adams' requests for treatment based on both Defendant BOP's policy, and the fact that FMC Devens had established the precedent of denying Ms. Adams appropriate medical treatment.

79. Since her transfer to USP-I Coleman, Ms. Adams has requested treatment for GID, as well as access to mental health and other support services, in writing, on at least five occasions.

80. Each of these requests has been formally denied for the reasons stated above and each denial references Defendant DR. FLETCHER's report from 2005 stating Ms. Adams is not a candidate for gender reassignment treatment because of BOP's policy.

81. As recently as January 20, 2009, Defendant BOP denied Ms. Adams' request for treatment for her GID, citing Defendant DR. FLETCHER's 2005 report citing BOP's policy.

82. Defendants have not evaluated Ms. Adams to ascertain her current condition and treatment needs since Defendant DR. FLETCHER's 2005 diagnostic assessment.

83. Despite her history of serious self-harm and affirmative diagnosis of GID, a serious medical condition recognized by the medical and psychological

11

communities, Defendants have consistently refused to provide Ms. Adams medical care to treat her GID.

### COUNT I: DEFENDANTS BOP, LAPPIN, AND KENDIG'S FAILURE AND REFUSAL TO PROVIDE CARE AND TREATMENT FOR MS. ADAMS' GID CONDITION VIOLATES THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

84. Plaintiff Adams restates and realleges paragraphs 1-83 as if fully set forth in this Count I.

85. Defendants have been deliberately indifferent to Ms. Adams' serious medical needs by failing to provide her with medical care for her GID. Defendants have not developed or implemented a treatment plan to treat her GID and they have not provided her with any medical care for GID.

86. By their policies, practices, acts and omissions, Defendants violate Ms. Adams' right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

87. As a matter of policy and practice, Defendants have refused, and continue to refuse, to provide appropriate medical treatment to Ms. Adams who has been diagnosed with a serious medical condition which has severe physical and emotional consequences.

88. To the extent that the failure and refusal of Defendants to provide adequate treatment rests on BOP Program Statement P6031.01(3), that policy is unconstitutional on its face and as applied to Ms. Adams as set forth more fully below in Counts II and III.

### COUNT II: DEFENDANTS BOP, LAPPIN, AND KENDIG'S PROMULGATION AND ENFORCEMENT OF BOP PROGRAM STATEMENT P6031.01(30)) VIOLATES THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION ON ITS FACE

89. Plaintiff Adams restates and realleges paragraphs 1-83 as if fully set forth in this Count II.

90. **By their policies, practices, acts and omissions, Defendants violate the rights of inmates with GID to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.**

12

A/72835556.2

91. Program statement P6031.01(30)) violates the Eighth Amendment to the United States Constitution on its face.

92. As a matter of policy and practice, Defendants have refused, and continue to refuse, to provide appropriate medical treatment to inmates who have been diagnosed with GID.

93. Defendants have long been aware of the consequences of failing to provide medically appropriate treatment for inmates with GID by way of accepted medical literature, advocacy organizations, prisoner grievances and other means, but have failed to take reasonable corrective action.

94. Defendants LAPPIN and KENDIG are ultimately responsible, under BOP policy, for the physical and psychiatric care of all federal prisoners within the BOP.

95. By refusing to provide appropriate medical treatment for GID, Defendants have acted, and continue to act, with deliberate indifference to the serious medical needs of, and the substantial risk of serious harm to, prisoners with GID.

### COUNT III: DEFENDANTS BOP, LAPPIN, AND KENDIG'S PROMULGATION AND ENFORCEMENT OF BOP PROGRAM STATEMENT P6031.01(30)) VIOLATES THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS APPLIED TO PLAINTIFF ADAMS

96. Plaintiff Adams restates and realleges paragraphs 1-83 as if fully set forth in this Count III.

97. BOP diagnosed Plaintiff with GID in 2005. At the time of her diagnosis, and at all times thereafter, Defendants were aware of the medically appropriate treatments for GID.

98. Despite this knowledge, BOP has refused, and continues to refuse, to provide Plaintiff with treatment for her GID.

99. Plaintiff has a history of serious suicide attempts and other self-harm while in BOP custody, including serious attempts to cut off her genitalia. These attempts have been diagnosed as being related, both directly and indirectly, to her untreated GID.

100. Defendants have applied Program Statement P6031.01(30) to Plaintiff, and in so doing have refused to allow her any access to medical or psychological treatment for her GID.

A/72835556.2

101. By their policies, practices, acts and omissions, Defendants violate the rights of Ms. Adams to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

102. Defendants have long been aware of the consequences of failing to provide medically appropriate treatment for Ms. Adams by way of accepted medical literature, advocacy organizations, her own grievances, and other means, but have failed to take reasonable corrective action.

103. By refusing to provide Ms. Adams medical treatment for GID, Defendants have acted, and continue to act, with deliberate indifference to the serious medical needs of, and the substantial risk of serious harm to, Ms. Adams.

**COUNT IV: DEFENDANT DR. FLETCHER WAS DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS, IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND CAUSING HER PHYSICAL AND EMOTIONAL INJURY**

104. Plaintiff Adams restates and realleges paragraphs 1-83 as if fully set forth in this Count IV.

105. Defendant DR. FLETCHER was deliberately indifferent to Plaintiff's serious medical and mental health needs, subjecting her to inadequate medical and mental healthcare to the point of no care for her serious medical condition, in violation of her right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

106. While under DR. FLETCHER's care, Plaintiff repeatedly requested treatment for her GID and made DR. FLETCHER aware of her serious medical and mental health needs, utilizing a variety of written and oral means of communication. DR. FLETCHER failed to address Plaintiff's concerns, failed to provide her any medical care or mental health treatment for GID, and failed to provide her with any ongoing psychiatric or other mental health treatment plan upon her discharge from his care even though he was aware that her serious medical and mental health needs persisted.

107. DR. FLETCHER was aware of Plaintiff's diagnosis of GID, and concurred with it. He was aware of her history of suicide attempts. He was aware of her history of attempted self-castration as well as her belief that self-castration was an alternative to hormone therapy as treatment for GID.

A/72835556.2

108. As a result of Defendant DR. FLETCHER's failure to treat Plaintiff's serious medical condition or develop any ongoing psychiatric treatment plan for her, even with her known history of self harm, Plaintiff once again attempted to sever her male genitalia, resulting in six stitches to her penis, causing her significant physical injury and significant emotional suffering.

## **PRAYER FOR RELIEF**

Plaintiff has suffered and will continue to suffer immediate and irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless she is provided with medically appropriate treatment for her GID. The declaratory and injunctive relief sought by Plaintiff is necessary to prevent continued and further injury.

**WHEREFORE**, Plaintiff requests that this Court grant the following relief:

A. Enjoin Defendants BOP, LAPPIN, and KENDIG from continuing to enforce the current BOP policy toward the treatment of incarcerated persons with Gender Identity Disorder;

B. Enjoin Defendant BOP to provide Ms. Adams with appropriate GID treatment by medical and mental health professionals with expertise in Gender Identity Disorder, including GID specific psychological treatment, hormone therapy, and other medical treatments deemed appropriate by medical professionals with experience treating GID;

C. Issue a permanent injunction against Defendants BOP, LAPPIN, and KENDIG from subjecting Plaintiff to the unconstitutional and illegal policies, acts, practices and omissions described in this Complaint;

D. Issue a judgment against Defendants BOP, LAPPIN, and KENDIG declaring that the policies, acts, practices and omissions of these Defendants with regard to prisoners with GID are unlawful and constitute cruel and unusual punishment in violation of the Eighth Amendments to the United States Constitution;

E. Order Defendant BOP, through Defendants LAPPIN and KENDIG, to promulgate a formal policy stating that prisoners with GID are entitled to medically appropriate treatment, including hormone therapy, "real life" experience, and transition surgery, regardless of whether or not they received GID treatment prior to incarceration;

F. Order Defendants BOP, through Defendants LAPPIN and KENDIG to take all other actions necessary to provide medically appropriate treatment for prisoners with GID;

G. Order Defendant DR. FLETCHER to pay monetary damages;

H. Order reasonable attorney fees as well as costs of suit to Plaintiff's attorneys; and

I. Grant such other and further relief as this Court considers just and proper.

Respectfully Submitted,

_____

**Jennifer Levi, Esq.**
Massachusetts Bar No. 562298
jlevi@glad.org
Gay & Lesbian Advocates & Defenders
30 Winter Street, Suite 800
Boston, MA 02108
617-426-1350

and

**Allyson E. Kurker, Esq.**
Massachusetts Bar No. 665231
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA 02110
617-951-8000
allyson.kurker@bingham.com

**Jody Marksamer, Esq.**[2]
California Bar No. 229913
jmarksamer@nclrights.org
**Shannon Minter, Esq.,**
sminter@nclrights.org
California Bar No. 168907
National Center for Lesbian Rights
870 Market Street, Suite 3
Boston, MA 02108
San Francisco, CA 94102
415-392-6257

---

[2] Attorneys Marksamer, Minter, and Capobianco have all submitted their Motions for admission to this District Pro Hac Vice with this Complaint in accordance with Local Rule 83.5.3(b).

A/72835556.2

---
and

**Cassandra Capobianco, Esq.**
Florida Bar No. 614734
ccapobianco@filsinc.org
Florida Institutional Legal Services, Inc.
12921 SW 1st Road, Ste. 107, # 346
Newberry, Florida 32669
352 955-2260

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5.2(b), I, Allyson Kurker, hereby certify that this document was filed by-hand with the clerk of courts on February 24, 2009, and will then be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Allyson E. Kurker*

Allyson E. Kurker